UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Savera Super Store, LLC
(SSS Tobacco Outlet)

    v.                                    Civil No. 14-cv-554-JD
                                              Opinion No. 2016 DNH 004
United States of America


O R D E R


After Savera Super Store, LLC ("Savera") was permanently disqualified from the Supplemental Nutrition Assistance Program ("SNAP") by the United States Department of Agriculture, Savera sought review under 7 U.S.C. § 2023 and 7 C.F.R. § 279.7. The United States moves for summary judgment, asserting that the undisputed facts show that Savera trafficked in SNAP benefits. Savera objects, arguing that the circumstances cited by the United States as evidence of trafficking in SNAP benefits are ordinary shopping activities at the store.


Standard of Review

After a final disqualification decision, the aggrieved party can file a complaint seeking judicial review. 7 U.S.C. § 2023(a)(13). The review is "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." § 2023(a)(15). The store

owner who seeks review bears the burden of showing, by a preponderance of the evidence, that the agency's decision was invalid. Fells v. United States, 627 F.3d 1250, 1253 (7th Cir. 2010); A Touch of Merengue, LLC – The Atom v. United States, 2014 WL 6609478, at *2 (D.R.I. Nov. 20, 2014); Rockland Convenience Store v. United States, 2011 WL 5120410, at *3 (D.N.H. Oct. 27, 2011).

Summary judgment is an appropriate procedure in cases brought under § 2023(a)(13). Nadia Int'l Market v. United States, 2015 WL 7854290, at *5 (D. Vt. Dec. 2, 2015). Summary judgment may be granted when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

In the context of review under § 2023, courts recognize that the agency decision of disqualification may be based on the investigation, redemption data, and transaction reports from the store.  Nadia Int'l Mkt., 2015 WL 7854290, at *5.  For that reason, summary judgment may be appropriate based on that record evidence even in the absence of "red handed" evidence of trafficking.  Id.; 109 Merrick Deli Corp. v. United States, 2014 WL 6891944, at 4 (E.D.N.Y. Sept. 30, 2014).

## Background

The Food and Nutrition Service ("FNS") operates SNAP on behalf of the Department of Agriculture to provide a means for low income persons to buy food at retail food stores.  7 U.S.C. § 2013(a); 7 C.F.R. § 271.3(a).  SNAP provides benefits through electronic benefit ("EBT") cards, and a recipient can then buy eligible food at an authorized store with the EBT card.  See 109 Merrick Deli Corp, 2014 WL 6891944, at *1.  Stores may not sell ineligible items through an EBT transaction or exchange EBT benefits for cash, which is trafficking in SNAP benefits.[1]  Id.

---

[1] Trafficking specifically means "buying, selling, or otherwise effecting an exchange of SNAP benefits issued and accessed via [EBT] cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."  7 C.F.R. § 271.2.  Trafficking also means "[t]he exchange of firearms, ammunition, explosives, or controlled substances . . . for SNAP benefits."  Id.

Authorized stores have EBT terminals to swipe the SNAP recipient's EBT card for a SNAP purchase, and the recipient enters a personal identification number for the transaction. The purchase amount is deducted from the recipient's account and credited to the store.  The terminal makes a receipt for each transaction, which shows the balance in the recipient's account.

SNAP benefit transactions are monitored by the FNS.  Each EBT card transaction is electronically recorded, showing the date and time of the purchase, the amount of the purchase, and the card number.  The FNS uses a program called "ALERT" to detect and then begin an investigation when irregular activity is recorded from an EBT card.  FNS has determined that irregular activity includes rapid and repetitive EBT debits of low dollar amounts, an unusually high number of transactions where the amount ends in "00", and debits of large amounts in small stores that do not have shopping baskets and have limited inventory of eligible SNAP items.

Muhammed I. Toor owns Savera Super Store, which is a convenience store that sells some inexpensive food items along with other items on Laurel Street in Manchester, New Hampshire. Toor applied for SNAP authorization in October of 2012.  In the application, Toor stated that only 5% of the sales at the store would be SNAP eligible.  The application was granted in January of 2013.

The store primarily sells tobacco products, does not have shopping baskets or carts, and has only one small check-out location with one register.  The store is open from 7:00 am to 12:00 am, every day.  Food sales are a small part of the business at the store.  Within a mile of the Savera Super Store, there are forty-five SNAP authorized stores, including many convenience stores, three small grocery stores, six medium grocery stores, and one large grocery store.

Transactions at Savera Super Store triggered the ALERT program in late 2013.  As a result, transactions at the store were analyzed from November of 2013 through January of 2014.  An investigator visited the store on February 22, 2014, with notice to and consent from the store.  Through his on-site visit, the investigator confirmed that the Savera Super Store primarily stocked products that were not eligible for SNAP, did not have shopping carts or baskets, had one cash register with limited space, and did not stock any expensive eligible food or ethnic items that were not available at other locations.[2]  On March 10, 2014, a fire occurred at the Savera Super Store.

---

[2] Although Toor states in his declaration that Savera Super Store carries "a wide variety of food products that are preferred in the Nepalese community," he does not provide any detail about what products are preferred, whether the preferred products are SNAP eligible, and whether they are available at other less expensive stores.

The FNS concluded that Savera Super Store was engaging in trafficking of SNAP benefits based on the investigation.  The FNS notified Savera Super Store on July 7, 2014, that it was charged with trafficking.  The activities identified as showing trafficking were rapid and repetitive transactions for the same household, an excessive number of high dollar amount transactions, and an unusual number of transactions ending in the same cents amount.  Toor denied the charges made by FNS and provided explanations for the cited transactional patterns.  Toor also represented that he could not provide documentary evidence to contest the FNS's findings because his records had been lost in the fire.

After reviewing the information provided by Toor about Savera Super Store's transactions, the FNS sustained the charge of trafficking and permanently disqualified the store from SNAP.  The FNS found that Savera Super Store was not eligible for a monetary penalty because it had not submitted evidence to support a request for that alternative penalty.  The Administrative Review Officer sustained permanent disqualification.

<u>Discussion</u>

The United States moves for summary judgment on the ground that the facts show that Savera Super Store engaged in

trafficking of SNAP benefits.  Savera Super Store objects,
arguing that the activities cited by the United States are not
unusual, irregular, or inexplicable, as alleged, but instead are
common at the store.  As a result, Savera Super Store contends,
disputed material facts preclude summary judgment.

The FNS is authorized to disqualify a store for SNAP
violations based on its analysis of EBT transactions and
redemptions and its investigator's report from visiting the
store.  Nadia Int'l Market, 2015 WL 7854290, at *5 (citing 7
U.S.C. § 2021(a)(2).  Although the parties are able to present
any relevant evidence that meets the Rule 56 standard for
purposes of de novo review, both the United States and Savera
Super Store primarily relied on the evidence presented in the
record.

A.   Transactions Ending in "00" Amounts

During the three-month investigation period, 25% of the
SNAP benefit sales ended in "00".  The FNS found that pattern
suspicious because few items in the SNAP-eligible inventory at
the store had whole dollar prices and many of the goods ended in
".09".  Other courts have concluded that a disproportionately
high number of transactions ending in "00" are evidence of
trafficking.  See Nadia Int'l Mkt., 2015 WL 7854290, at *6; 109
Merrick Deli Corp., 2014 WL 6891944, at *4; Onukwugha v. United

States, 2013 WL 1620247, at *8-*9 (E.D. Wis. Apr. 12, 2013);

Rockland Convenience Store, 2011 WL 5120410, at *9.

Savera Super Store argues that the "00" amounts are common among all of its transactions, not just the SNAP transactions, and that its sales and special offers of two for $2.00 or five for $10.00 explain the transaction amounts.[3]  Savera Super Store, however, does not address the specific prices charged for its SNAP-eligible products or the government's finding that few SNAP eligible items ended in "00".  Sales and specials for non-eligible items would not affect legitimate SNAP purchases.

Therefore, Savera Super Store has not shown a factual dispute as to whether the relatively high percentage of transactions with "00" amounts indicates trafficking.

B.  Repeat Transactions in Short Time Periods

The FNS concluded that the low cost of the SNAP eligible items, the lack of shopping carts and baskets, and the restricted checkout space at the Savera Super Store were inconsistent with the number of repetitive transactions in a short period.  Specifically, the FNS cited an example from December 5, 2013, when the same recipient first made an EBT

---

[3] The customer affidavits that repeat that sales of multiple items for a round dollar amount were offered at the store do not state what items were offered in those sales other than a general reference to groceries.

transaction for $49.47 and then a minute and a half later made a transaction for $58.50.  The FNS noted the unlikely total of $107.97 for SNAP eligible items, which are low priced, and the unlikely time frame of repeat transactions within a minute and a half of each other.

Savera Super Store explains that the repeat transactions occurred on less than twenty percent of the days the store was open and that it was not uncommon for customers to make a purchase and then realize they needed other items and make another purchase.  The store also represents that customers might return for additional purchases later the same day.  The store further explains that because it is located in a poor neighborhood where customers have to walk to the store, they make bigger purchases to avoid walking to another store at a greater distance.  The store cites customer affidavits that show customers did make repeat purchases in the same day.

Savera Super Store, however, did not address the low prices of its SNAP-eligible products, cited by the FNS, or the logistics of managing a large number of low-priced items to show how a customer could make repeat purchases of eligible products, totaling over $100, in just a few minutes.  For example, the store did not explain how a customer would have time to buy $49.47 in SNAP-eligible products and then in a minute and a half find, carry to the checkout, and purchase another $58.50 worth

of SNAP-eligible products.  As such, Savera Super Store's
evidence of some legitimate repeat purchases does not undermine
the evidence that other transactions on EBT cards were not
legitimate.  See, e.g., Nadia Int'l Mkt., 2015 WL 7854290, at
*6; A Touch of Merengue, LLC - The Atom, 2014 WL 6609478, at
*3-*4; Hajifarah v. United States, 779 F. Supp. 2d 191, 205-06
(D. Me. 2011); Alkabsh v. United States, 733 F. Supp. 2d 929,
937-38 (W.D. Tenn. 2010).

C.  Large Transaction Amounts

     The FNS investigation also found that the Savera Super
Store had an inordinate number of high dollar amount
transactions, which were 300% higher than purchases in similar
stores.  The store justifies the amount of its transactions
based on the closing of two grocery stores in the area and
provided customer affidavits that they made large purchases at
the store.  Savera Super Store provides affidavits of a few
customers who state that they have made SNAP purchases in excess
of $30.00.

     The United States provides evidence that despite the
closing of two grocery stores, there were forty-five other
stores within a mile of Savera Super Store that were authorized
to accept SNAP benefits.  The United States notes that Savera
Super Store's customers preferred that store because of its

location and would not have shopped at the larger grocery stores that were farther away.  Therefore, Savera Super Store has not shown that the closing of two grocery stores, which were more than a mile away, affected its business.

In addition, other stores close to Savera Super Store, such as Market Basket, sold many more SNAP-eligible products at lower prices.  The United States provides evidence that on one occasion during the investigation a SNAP recipient bought $199.57 worth of items at Savera Super Store with the EBT card, then bought $31.21 worth of items at Market Basket with the EBT card, and twenty-two minutes later returned to Savera Super Store to buy another $34.95 worth of items on the EBT card. That series of transactions, and similar transactions, are evidence of trafficking because buying more at Savera Super Store than at Market Basket is not consistent with legitimate activity.  Similarly, another recipient bought $234.52 worth of items on an EBT card in one day at Savera Super Store, despite having access to and using Market Basket on other occasions. Transactions of large amounts, particularly in a series, are evidence of trafficking.  See, e.g., Arias v. United States, 2014 WL 5004409, at *8-*9 (S.D.N.Y. Sept. 29, 2014); Narin Mkt., LLC v. United States, 2014 WL 1820447, at *2-*3 (D.R.I. May 7, 2014); Hajifarah, 779 F. Supp. 2d at 207.

The undisputed evidence shows that Savera Super Store engaged in suspicious transactions that support trafficking findings.  Savera Super Store has not shown a material factual dispute, about whether it engaged in trafficking, to avoid summary judgment.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion for summary judgment (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge


January 5, 2016

cc:  Jenna Marie Bergeron, Esq.
     Michael J. Iacopino, Esq.
     Terry L. Ollila, Esq.